416 So.2d 804 (1982)
Ervin McCRAY, Appellant,
v.
STATE of Florida, Appellee.
No. 59691.
Supreme Court of Florida.
June 24, 1982.
Richard L. Jorandby, Public Defender and Louis G. Carres, Asst. Public Defender, West Palm Beach, for appellant.
Jim Smith, Atty. Gen. and Russell S. Bohn, Asst. Atty. Gen., West Palm Beach, for appellee.
*805 PER CURIAM.
This is an appeal by Ervin McCray from his conviction of first-degree murder and from the trial judge's imposition of the death sentence after the jury had recommended life imprisonment. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the conviction, but direct that the death sentence be reduced to a sentence of life imprisonment in accordance with the jury's recommendation.
The record reflects the following facts. Shortly before 7:00 p.m. on December 17, 1980, appellant McCray, Willie Footman, Jerry Davis, and Sammy Walker drove to the store managed by the victim, Bernard Fetch. Appellant and Davis entered the store and asked to see some guns. The two left the store soon after Fetch told them that he had already put the guns away for the night. Davis then drove the men down a back road behind the store's rear parking lot and stopped the car. McCray and Footman left the car and walked back to the victim's van, which was parked in the rear parking lot. Appellant broke a window of the van and removed several boxes of guns, took them to the edge of the woods beside the road, and returned to Davis's car.
Davis drove the group back into the rear parking lot where Fetch, preparing to leave for the night, sat in his van talking with Thomas Cartwright. Sammy Walker testified that McCray jumped from the car, saying that he didn't want to leave emptyhanded. Cartwright testified that a man he later identified as McCray approached the van, yelled, "This is for you, mother fucker," and shot Fetch three times in the abdomen. According to Cartwright, Fetch fired back at McCray after he was shot. Walker testified, however, that Fetch fired his weapon before appellant "fired back" at him. No money was taken from Fetch.
Appellant, testifying in his own behalf, asserted that Walker had broken into the van and that he and Walker had taken the guns into the woods. Appellant further stated that he left with Davis immediately after the guns were taken into the woods, that they drove to the Blue Chip Bar, and that he remained at the bar for the rest of the evening. Appellant produced two witnesses who testified that he was at the Blue Chip Bar at about 7:10 p.m. on the night of the killing.
Codefendant Walker, who was eighteen years of age, negotiated a plea before trial. He was placed on probation and served as the key witness for the state in the prosecution. The testimony of codefendants Footman and Davis, who stood trial with appellant on charges of first-degree murder and attempted armed robbery, generally corroborated that of Walker. The jury acquitted Footman and Davis of all charges. Appellant, although found not guilty of attempted armed robbery, was convicted of first-degree murder.
Neither the state nor the appellant presented any evidence at the sentencing hearing. After arguments by counsel, the jury recommended a sentence of life imprisonment for McCray. The judge did not accept the jury's life recommendation, but rather imposed the death sentence upon finding three aggravating circumstances: (1) the crime was committed for pecuniary gain; (2) the crime was especially heinous, atrocious, and cruel; and (3) the crime was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. The trial judge found no mitigating circumstances.

Trial Phase
Appellant asserts that his conviction should be vacated upon four grounds: (1) the trial court abused its discretion in denying his motion to sever his trial from that of his two codefendants; (2) the trial court erred in limiting his cross-examination and impeachment of the eyewitness Cartwright; (3) the trial judge erroneously denied his motion to compel the designation of a more specific time in the statement of particulars; and (4) the trial judge erred in instructing the jury on felony murder. We find the last three points to be without merit and to warrant no further comment by this Court. The severance issue, however, requires a full discussion.
*806 The trial court, in denying the motion for severance, stated: "I think the rules suggest that people charged together ought to be tried together unless there is some compelling reason to show why they should not be tried together, and I am not satisfied I have been shown that good reason." Appellant argues that the trial court should have granted his motion for severance under the provisions of Florida Rule of Criminal Procedure 3.152(b)(1) because the defenses of codefendants Footman and Davis were completely antagonistic to his defense. The state responds by asserting that severance is not required simply because one defendant is blaming the other for the crime. In addition, the state claims that there was no prejudice since, even without the codefendants' testimony, the evidence of appellant's guilt was overwhelming.
Rule 3.152(b)(1) directs the trial court to order severance whenever necessary "to promote a fair determination of the guilt or innocence of one or more defendants... ." As we stated in Menendez v. State, 368 So.2d 1278 (Fla. 1979), and in Crum v. State, 398 So.2d 810 (Fla. 1981), this rule is consistent with the American Bar Association standards relating to joinder and severance in criminal trials.[1] The object of the rule is not to provide defendants with an absolute right, upon request, to separate trials when they blame each other for the crime. Rather, the rule is designed to assure a fair determination of each defendant's guilt or innocence. This fair determination may be achieved when all the relevant evidence regarding the criminal offense is presented in such a manner that the jury can distinguish the evidence relating to each defendant's acts, conduct, and statements, and can then apply the law intelligently and without confusion to determine the individual defendant's guilt or innocence. The rule allows the trial court, in its discretion, to grant severance when the jury could be confused or improperly influenced by evidence which applies to only one of several defendants. A type of evidence that can cause confusion is the confession of a defendant which, by implication, affects a codefendant, but which the jury is supposed to consider only as to the confessing defendant and not as to the others. A severance is always required in this circumstance. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).
In situations less obviously prejudicial than the Bruton circumstance, the question of whether severance should be granted must necessarily be answered on a case by case basis. Some general rules have, however, been established. Specifically, the fact that the defendant might have a better chance of acquittal or a strategic advantage if tried separately does not establish the right to a severance. United States v. Cravero, 545 F.2d 406 (5th Cir.1976), cert. denied, 430 U.S. 983, 97 S.Ct. 1679, 52 L.Ed.2d 377 (1977); United States v. Perez, 489 F.2d 51 (5th Cir.1973), cert. denied, 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974). Nor is hostility among defendants, or an attempt by one defendant to escape punishment by throwing the blame on a codefendant, a sufficient reason, by itself, to require severance. United States v. Herring, 602 F.2d 1220 (5th Cir.), cert. denied, 444 U.S. 1046, 100 S.Ct. 734, 62 L.Ed.2d 732 (1979); United States v. Ehrlichman, 546 F.2d 910 (D.C. Cir.1976), cert. denied, 429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 570 (1977); Perez; Hawkins v. State, 199 So.2d 276 (Fla. 1967), vacated on other grounds, 408 U.S. 941, 92 S.Ct. 2857, 33 L.Ed.2d 765 (1972).[2] If the defendants engage in a swearing match as to who did what, the jury should resolve the conflicts and determine the truth of the matter. As in this case, the defendants are confronting each other and are subject to cross-examination upon testifying, thus affording the jury access to all relevant facts.
*807 The dispute between appellant and his codefendants concerned appellant's whereabouts at the time of the murder. Appellant's codefendants testified that he shot Bernard Fetch. Appellant challenged this evidence with his own testimony and with the testimony of two alibi witnesses that he was at the Blue Chip Bar at the time of the shooting. Appellant had full opportunity to confront and cross examine each of the witnesses against him, including his codefendants. None of the codefendants made a Bruton-type confession, and the evidence presented was not so complex that the jury would be confused by it and incapable of applying it to the conduct of each individual defendant. We conclude that the trial judge properly exercised his discretion in denying the motion for severance. Further, we find that this joint trial did not in any way prejudice the right of appellant to a fair determination of his guilt or innocence of the offense charged. This ruling is totally consistent with our recent decision in Menendez v. State.
Appellant relies heavily on the decision in Crum v. State to support his asserted right to a severance. Crum is distinguishable. In that case, two brothers, Preston and Marvin Crum, were charged with murder. Prior to trial, counsel for appellant Preston obtained a statement from codefendant Marvin which was in total accord with Preston's version of the incident. After the jury was sworn, Preston learned that Marvin had changed his story and intended to accuse Preston, at trial, of committing the murder. Marvin was not required to give the statement, but once he did so, Preston was entitled to rely on that statement. When codefendant Marvin changed his story after the jury was sworn, we determined that, on a proper motion, severance was necessary because Preston was, under these circumstances, denied a fair trial. The problem in Crum was not simply that the codefendants had antagonistic defenses. The problem was that one codefendant induced the other to believe that their defenses would be completely consistent and then, after jeopardy attached, decided to change his story, thereby prejudicing the proper preparation of the case for trial. The circumstances would have been different had there been no prior statement or had there been sufficient notice before trial of the change in Marvin's position.
We reiterate that hostility among defendants or the desire of one defendant to exculpate himself by inculpating a codefendant are insufficient grounds, in and of themselves, to require separate trials. In the instant case, the trial judge correctly denied the motion for severance.

Sentencing Phase
Appellant claims that the trial judge improperly imposed the death sentence, particularly since the jury recommended life imprisonment. We agree that, upon the facts of this case, the trial judge's action was contrary to our holdings in Tedder v. State, 322 So.2d 908 (Fla. 1975), and in McCaskill v. State, 344 So.2d 1276 (Fla. 1977). The trial judge should have followed the jury recommendation and imposed a life sentence.
We find that none of the aggravating circumstances found by the trial judge were properly applied to the facts of this case. The evidence does not establish that Fetch was killed for pecuniary gain, especially since the jury acquitted appellant on the armed robbery charge and the state had previously dropped the burglary charge. Further, we find that this crime was not "especially heinous, atrocious, or cruel." § 921.141(5)(h), Fla. Stat. (1979) (emphasis added). Maggard v. State, 399 So.2d 973 (Fla. 1981); Lewis v. State, 377 So.2d 640 (Fla. 1979); Kampff v. State, 371 So.2d 1007 (Fla. 1979); State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1951, 40 L.Ed.2d 295 (1974). Finally, we conclude that this was not a murder committed in a "cold, calculated, and premeditated manner without any pretense of moral or legal justification." § 921.141(5)(i), Fla. Stat. (1979). That aggravating circumstance ordinarily applies in those murders which are characterized as executions or contract murders, although that description is not intended to be all-inclusive. Jent v. *808 State, 408 So.2d 1024 (Fla. 1981); Combs v. State, 403 So.2d 418 (Fla. 1981). Given the circumstances of this case, the jury's recommendation of a life sentence was not unreasonable and, in fact, is consistent with what other juries have done in somewhat similar circumstances. See, e.g., Lewis; McCaskill v. State, 344 So.2d 1276 (Fla. 1977).
For the reasons expressed, we affirm appellant's conviction of first-degree murder, but reverse the sentence of death. The cause is remanded to the trial court with directions to enter a sentence of life imprisonment without the possibility of parole for twenty-five years.
It is so ordered.
SUNDBERG, C.J., and BOYD, OVERTON, ALDERMAN, McDONALD and EHRLICH, JJ., concur.
ADKINS, J., concurs in result only with the conviction and dissents with the sentence.
NOTES
[1] ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Joinder and Severance § 2.3(b)(ii) (1968); Standards for Criminal Justice § 13-3.2(b) (2d ed. 1980).
[2] See also Annot., 82 A.L.R.3d § 6 at 260 (1978).