436 So.2d 50 (1983)
Richard KING, Appellant,
v.
STATE of Florida, Appellee.
No. 59464.
Supreme Court of Florida.
July 21, 1983.
Rehearing Denied September 16, 1983.
*51 Warren H. Edwards, Orlando, for appellant.
Jim Smith, Atty. Gen., and Mark C. Menser, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
This is an appeal by the appellant, Richard King, from his conviction of first-degree murder and the sentence of death imposed on him by the trial judge in accordance with the jury's recommendation. We have jurisdiction, article V, section 3(b)(1), Florida Constitution, and affirm.
The record reflects the following facts. On the morning of August 27, 1979, the victim, Peggy Burnside, was murdered in the Orlando, Florida, apartment she shared with appellant. She had been struck on the forehead with a blunt instrument and then shot in the head. She died as a result of the gunshot wounds. The appellant, while in Daytona Beach, Florida, on the evening of the crime, called the Daytona Beach police and turned himself in, stating that he had seen news reports of the Burnside homicide on television and believed the police were looking for him. A patrolman was dispatched to meet him.
Appellant, after receiving the appropriate Miranda warnings, was interviewed by Daytona Beach police officers, to whom he gave a statement. In that statement, appellant indicated that he had argued with the victim that morning and had struck her in the head with a blunt object. The Daytona Beach police contacted the Orlando police department and were advised that the victim had not only been hit with a blunt object but had also been shot in the head. Upon learning that the victim had been shot, the Daytona Beach police officers questioned appellant again. He was advised that the victim had been shot and was asked if he had shot her. Appellant exclaimed, "How would you feel if you just killed someone?" and began crying. He then asked that the interview cease, and his request was honored.
The Orlando police officers thereafter arrived in Daytona Beach. They gave appellant the appropriate Miranda warnings; he told them he wanted a lawyer. One of the Orlando police officers told him that they only wanted to talk about what he had *52 already told the Daytona Beach police detective. Appellant responded with incriminating statements confirming what he had told the Daytona Beach police. He admitted that he had shot the victim twice. Subsequently, the officers attempted to record the conversation, and appellant again requested an attorney. When told that the taping was to be used only as a permanent record of the conversation, appellant continued speaking and made additional incriminating statements.
The evidence at trial established that the victim and the appellant shared a communal living arrangement and that the victim was seeking a divorce from her husband. A .38 caliber revolver and a piece of pipe were found in appellant's apartment, introduced into evidence, and properly identified as the weapons used in this murder. Evidence was also admitted to show that twenty-three days before this incident, appellant had beaten the victim to the point that she became unconscious. Appellant testified in his own behalf and denied that he had shot the victim. Appellant, prior to trial, was examined by three psychiatrists, each of whom found him to be competent at the time of the offense and competent to stand trial.
After the jury returned a verdict of guilty, the state, in the sentencing hearing, introduced evidence that appellant had been convicted of a prior violent felony, specifically, manslaughter, for killing his common-law wife by striking her three times in the head with an axe. Although appellant took the stand in the sentencing hearing, he asserted a fifth amendment privilege and refused to testify. The jury returned a verdict recommending the imposition of the death penalty. The trial judge refused a request for a pre-sentence investigation report and determined that the death penalty was appropriate, finding the following three aggravating circumstances:
A. That the Defendant was previously convicted of a felony involving the use of violence to the person in that in 1969 in South Carolina he killed a woman by striking her in the head three times with an axe and was convicted of manslaughter for that killing;
B. That the capital felony involved herein was especially heinous, atrocious, or cruel in that the victim was struck forcefully in the face by the Defendant with a heavy steel bar, not rendering the victim unconscious, after which the Defendant went to another room of the house involved and secured a pistol and returned to the victim and shot her in the face and in the back of the head with the pistol, causing her death;
C. That the capital felony involved herein was a homicide and was committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification in that after having struck the victim a grevious [sic] blow in the face with a heavy steel bar, which did not render the victim unconscious, the Defendant went to another room of the house involved, secured a pistol from its place of concealment, returned to the victim and shot her with the pistol, once in the face and once in the back of the head; that the said acts of the Defendant were precipitated by an argument with the victim; that there is no evidence that the victim, who was female and physically smaller than the Defendant, was threatening the Defendant in any way at the time of his said acts.
The trial judge found no mitigating circumstances.

Trial Phase
Appellant asserts that his conviction should be vacated upon eight grounds: (1) the trial court erred in finding appellant competent to stand trial; (2) the trial court improperly excused for cause certain jurors who stated that they were opposed to the death penalty but who could sit impartially on the issue of guilt or innocence; (3) the trial court improperly admitted appellant's oral and written statements because they *53 were given after he had exercised his right to counsel; (4) the trial court improperly admitted a photograph of the victim; (5) the trial court erred in allowing the admission of testimony that the victim had been beaten by appellant twenty-three days prior to the killing; (6) the trial court improperly restricted the appellant's cross-examination of the husband of the victim; (7) the evidence was insufficient to establish premeditation; and (8) section 921.141, Florida Statutes (1979), is facially unconstitutional or, if constitutional, was unconstitutionally applied to the facts of this case.
We find that none of these issues has any merit and that six may be disposed of summarily. With regard to the first issue, the competency of the defendant, appellant in effect disagrees with the expert testimony presented to the trial judge. Three psychiatrists examined the appellant and found him sane and competent to communicate, advise, and assist counsel. See Lane v. State, 388 So.2d 1022, 1025 (Fla. 1980). The second issue, the propriety of excusing jurors who stated that they were opposed to the death penalty but that they could sit impartially on the issue of guilt or innocence, has been previously resolved by this Court in King v. State, 390 So.2d 315 (Fla. 1980), cert. denied, 450 U.S. 989, 101 S.Ct. 1529, 67 L.Ed.2d 825 (1981), and in Witt v. State, 342 So.2d 497 (Fla.), cert. denied, 434 U.S. 935, 98 S.Ct. 422, 54 L.Ed.2d 294 (1977). We find no impropriety in the trial judge's excusing the jurors in this case. We also note that no objection was raised by appellant at the time the jurors were excused. We next find that neither the admission of the photograph of the victim nor the asserted restriction on the cross-examination of the victim's husband was reversible error. Further, the evidence was clearly sufficient to establish premeditation, and section 921.141 is both facially constitutional, as we have previously held, and has been constitutionally applied to the appellant in this case.
The issues pertaining to the confessions of the appellant and to the prior violent episode between appellant and the victim require a more extensive discussion.

Confessions
Appellant asserts that his confessions should be suppressed on the grounds that they were obtained in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). It is important to recognize that appellant made two separate confessions. The first was made to the Daytona Beach police, to whom he turned himself in and who knew nothing of the incident at the time he was taken into custody. In this first interview, appellant admitted hitting the victim in the head with a blunt instrument, and, when asked by the Daytona Beach police officers whether he shot the victim, he broke down and cried, saying, "How would you feel if you had just killed someone?" This confession was clearly admissible since appellant was given his Miranda rights and waived them. There is no real assertion by appellant that this statement should have been suppressed.
The admissions and statements which bring into issue the principles set forth in Edwards v. Arizona are those appellant gave to the Orlando police officers when they came to Daytona Beach to talk to him about this incident. Appellant contends that these statements were erroneously admitted into evidence because appellant made them after asking for counsel. The record is clear that the Orlando officers properly gave appellant his Miranda warnings. One officer testified that, after he gave appellant his constitutional rights, the following exchange occurred:
As I was starting the interview, he said to me, he, "I think I need an attorney." And at which time I responded, "We're only here to talk to you about what the detective from Daytona Beach talked to you about."
Appellant responded by giving a detailed statement of what occurred between him and the victim. The statement was subsequently taped, reduced to writing, and signed by appellant.
*54 We must look at all the circumstances surrounding this second statement to determine its admissibility. The rule, as expressed by Justice White in Edwards, states:
It is reasonably clear under our cases that waivers of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case "upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." Johnson v. Zerbst, 304 U.S. 458, 464 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461] (1938). See Faretta v. California, 422 U.S. 806, 835 [95 S.Ct. 2525, 2541, 45 L.Ed.2d 562] (1975); North Carolina v. Butler, 441 U.S. 369, 374-375 [99 S.Ct. 1755, 1757-1758, 60 L.Ed.2d 286] (1979); Brewel v. Williams, 430 U.S. 387, 404 [97 S.Ct. 1232, 1242, 51 L.Ed.2d 424] (1977); Fare v. Michael C., 442 U.S. 707, 724-725 [99 S.Ct. 2560, 2571, 61 L.Ed.2d 197] (1979).
451 U.S. at 482, 101 S.Ct. at 1883. (Emphasis added.) There is no "paternalistic rule protecting a defendant from his intelligent and voluntary decisions about his own criminal case." Michigan v. Mosely, 423 U.S. 96, 109, 96 S.Ct. 321, 329, 46 L.Ed.2d 313 (White, J., concurring in result). Whether the appellant in this instance chose to continue to talk to police without counsel, knew his rights, and knew that in giving a statement he was waiving the right to counsel, are questions of fact to be determined in light of all the circumstances.
The evidence in this case reflects that appellant had been fully advised of his rights on numerous occasions and had signed three waiver forms, one for the Daytona Beach police and two for the Orlando police; that he was familiar with the criminal process because he had previously been charged, tried, and convicted for a serious felony; that he had turned himself in and had just previously admitted that he had struck the victim in the head with a blunt object and implied that he had killed the victim. We believe that the response by the officer to appellant's request for an attorney, that he and his fellow officer were there to ask him to repeat what he had already told the Daytona Beach police officer, was a totally reasonable response under the circumstances and was not intended to induce appellant to further incriminate himself. See Edwards, 451 U.S. 477, 490, 101 S.Ct. 1880, 1887, 68 L.Ed.2d 378 (Powell, J., concurring in result) (police may legitimately inquire whether a suspect has changed his mind about speaking to them).
We conclude that appellant gave the statement to the Orlando police officers voluntarily, with full knowledge of his rights to counsel, and with knowledge that, by giving the statement under the circumstances, he was waiving his right to counsel. This was clearly not a situation such as that in Edwards, where the defendant stated, "I want an attorney before making a deal," and was subsequently advised that he had to talk to the detectives.
We recognize that, given the various interpretations of Edwards, the admissibility of the statements appellant made to the Orlando police officers presents a close question. On the present record, however, we find that even had the trial court excluded these statements, the admissions appellant had made to the Daytona Beach police, combined with the other evidence in the case, clearly established appellant's guilt. The trial court's error, if any, was harmless under the principles set forth in Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

Evidence that Appellant Had Previously Assaulted the Victim
Appellant contends the trial court improperly allowed testimony that he had severely beaten the victim twenty-three days prior to the killing. Appellant asserts that the circumstances of this beating were not similar to those of the killing and that the beating was too remote in time to be relevant to the case. Consequently, he argues, this evidence was admitted in violation of Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. *55 102, 4 L.Ed.2d 86 (1959), because it was utilized only to show propensity and not to prove an element essential to this offense. We disagree. We believe that the testimony was not remote in time, was proper as evidence of premeditation, and was proper for identification since one of the theories of appellant's defense was to imply that the victim's present husband could have been the killer. Under these circumstances, we find the testimony admissible.

Sentencing Phase
Appellant contends that the trial court erred in finding three aggravating circumstances and no mitigating circumstances. First, appellant contends that the testimony concerning the nature of the violent felony of which he was previously convicted, the axe-slaying of his common-law wife, was improperly admitted into evidence and improperly relied on by both the jury and the trial judge. We find this contention incomprehensible. A judge and jury, in imposing sentence, must know the nature of the offense in order to give proper weight to the violent felony conviction. We also disagree with the assertion that the killing in the instant case culminated a series of incidents occurring in the heat of passion, and, that, therefore, this killing was not heinous, atrocious, or cruel.
We do, however, question the finding that this murder was committed in a cold, calculated, and premeditated manner, without any pretense of moral or legal justification, as we have now defined this aggravating factor. The trial judge in this case did not have the benefit of our recent decisions in McCray v. State, 416 So.2d 804 (Fla. 1982); Jent v. State, 408 So.2d 1024 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982); and Combs v. State, 403 So.2d 418 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2258, 72 L.Ed.2d 862 (1982). Although premeditation was proven, we do not think the evidence was sufficient to establish that this homicide was committed in a cold and calculated manner. As we have stated, this "aggravating circumstance ordinarily applies in those murders which are characterized as executions or contract murders, although that description is not intended to be all-inclusive." McCray, 416 So.2d at 807. We conclude that this was not a proper aggravating circumstance under the facts of this case.
Appellant also argues that the mitigating circumstance of extreme mental or emotional disturbance should have been considered by the trial judge because of appellant's mental condition. He supports this argument by citing his behavior at trial: He refused to wear civilian clothes at the trial, asserted that he was black when in fact he is Caucasian, and insisted on testifying at the sentencing hearing, only to assert a fifth amendment privilege. In addition, appellant contends that this was a crime of passion occurring between two individuals engaged in an on-going relationship. We find that the total record in this case, including the psychiatric reports, justifies the finding of the trial judge that this mitigating circumstance need not be considered as a factor in imposing sentence in this case.
Our finding that one aggravating circumstance was improper does not require a resentencing where there remain two aggravating and no mitigating circumstances. Enmund v. State, 399 So.2d 1362 (Fla. 1981), rev'd on other grounds, ___ U.S. ___, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); Hargrave v. State, 366 So.2d 1 (Fla. 1978), cert. denied, 444 U.S. 919, 100 S.Ct. 239, 62 L.Ed.2d 176 (1979). In affirming the imposition of the death penalty on appellant, we note that the facts in this case are similar to those in Harvard v. State, 414 So.2d 1032 (Fla. 1982), cert. denied, ___ U.S. ___, 103 S.Ct. 764, 74 L.Ed.2d 979 (1983), where we also affirmed the death penalty. Appellants in both cases killed women with whom they had a relationship, and, in both cases, appellants had previously been convicted of similar violent offenses.
For the reasons expressed, we affirm the conviction and sentence of death.
It is so ordered.
*56 ALDERMAN, C.J., and BOYD, OVERTON, McDONALD and EHRLICH, JJ., concur.
ADKINS, J., concurs in the conviction, but concurs in result only in the sentence.