532 So.2d 54 (1988)
Orlando HERRERA, Appellant,
v.
The STATE of Florida, Appellee.
No. 87-893.
District Court of Appeal of Florida, Third District.
October 11, 1988.
*55 Bennett H. Brummer, Public Defender, and May L. Cain, Sp. Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., and Richard L. Polin, Asst. Atty. Gen., for appellee.
Before BASKIN, FERGUSON and JORGENSON, JJ.
PER CURIAM.
Appellant Orlando Herrera challenges his convictions for trafficking in cocaine and conspiracy to traffic in cocaine. We affirm.
A Miami Police undercover officer, accompanied by a confidential informant, went to the apartment of Pedro Gazo to consummate a prearranged purchase. By means of a hidden device, the officer recorded the conversation. When the officer and the informant arrived, Herrera, Alberto Arce, and Pedro Gazo were present. At the officer's request, Arce agreed to translate for the officer. Shortly after the officer's arrival, Jose Gomez delivered a package. After Gomez left, Herrera, Arce, and Gazo went into the kitchen while the officer sat in another room. At Arce's request, the officer entered the kitchen where he observed Herrera, Arce, and Gazo standing near a counter on which a package of cocaine had been placed. Herrera was holding a knife near the slit package. Arce informed the officer that Herrera wanted a small rock of cocaine from the kilo; the officer replied that this was business. After field-testing the cocaine, the officer gave a prearranged signal; whereupon, other officers entered the apartment and arrested Herrera, Arce, and Gazo.
At trial, the court ruled that, although the tape was not entirely audible, it would be admitted into evidence, except for a small segment. A codefendant objected and sought a severance, but counsel for Herrera did not object to the court's ruling. The jury listened to the audio tape at the trial and, again, during deliberations. The trial culminated in a verdict finding appellant Herrera guilty as charged in the information.[1] *56 He seeks reversal, contending first that the trial court improperly admitted the tape of the drug transaction into evidence. He asserts that the recording is inaudible and, therefore, prejudicial and that the state failed to establish the proper foundation for its admission.
Whether to admit a partially inaudible tape is a matter within the trial court's discretion. After listening to the tape, this court agrees that the tape was only partially inaudible. See Odom v. State, 403 So.2d 936 (Fla. 1981), cert. denied, 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982); Edwards v. State, 529 So.2d 1213 (Fla. 4th DCA 1988); Matheson v. State, 468 So.2d 1011 (Fla. 4th DCA 1985), cause dismissed, 500 So.2d 1341 (Fla. 1987); State v. Steinbrecher, 409 So.2d 510 (Fla. 3d DCA 1982); Gomien v. State, 172 So.2d 511 (Fla. 3d DCA 1965). Cf. Springer v. State, 429 So.2d 808 (Fla. 4th DCA 1983) (admission of almost totally inaudible tape reversible error); Carter v. State, 254 So.2d 230 (Fla. 1st DCA 1971) (same), cert. denied, 257 So.2d 260 (Fla. 1972). Appellant has not demonstrated that the trial court abused its discretion in admitting the tape.
As to the predicate for admission, we again find no basis for reversal. Appellant failed to challenge the tape's authenticity in the trial court; thus, this issue was not preserved for appellate review. See Tillman v. State, 471 So.2d 32, 35 (Fla. 1985) ("In order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved."); Allen v. State, 492 So.2d 802, 803 (Fla. 1st DCA 1986) ("The specific basis for reversal [lack of authentication] argued here not having been asserted as a legal ground for the objection to admissibility below, the point has not been preserved for appeal.").
Next, appellant contends that the trial court should not have permitted the jury to listen to the tape during its deliberations without translation by an interpreter. Again, we disagree. Appellant expressly agreed that the jury could replay the tape it had heard during the trial and objected to an interpreter translating the Spanish segments. Accordingly, appellant may not complain of the very situation he created at trial. White v. State, 446 So.2d 1031, 1036 (Fla. 1984); see Crews v. State, 442 So.2d 432, 434 (Fla. 5th DCA 1983); Baxter v. State, 375 So.2d 16 (Fla. 2d DCA 1979), cert. denied, 383 So.2d 1190 (Fla. 1980); Fla.R.Crim.P. 3.400.
Appellant also argues that Detective Dygon's testimony at trial repeating statements made by Herrera during the drug purchase and translated by Arce was inadmissible as hearsay and unproved accuracy. We disagree.
Although Detective Dygon's testimony contained translated statements which may be considered hearsay, Chao v. State, 478 So.2d 30 (Fla. 1985), it falls within the exceptions delineated in section 90.803(18)(c), Florida Statutes (1983).[2] "An admission specifically authorized to be given through a competent interpreter is like any other admission authorized to be given by an agent and may be testified to by the person to whom the agent gives the statement." Chao, 478 So.2d at 32. The confidential informant arranged the sale of cocaine to Detective Dygon. Appellant spoke Spanish; Detective Dygon speaks only English. Arce spoke both English and Spanish. According to his testimony, Detective Dygon requested that Arce act as a translator to facilitate the sale. Arce translated the conversations between Herrera, Gazo, and Detective *57 Dygon. We conclude that these circumstances clearly indicate that appellant authorized Arce to translate for him. See Chao, 478 So.2d at 32 ("[defendant] undoubtedly contemplated verbal communication with the police in turning himself in, or it would have been unnecessary to involve [translator]"). As to the reliability or accuracy of Arce's translations, appellant has shown no motive on Arce's part to mislead appellant or Detective Dygon. Cf. Kalos v. United States, 9 F.2d 268 (8th Cir.1925) (third party's testimony of translated conversation excluded where translator had motive to fabricate). Moreover, Arce's translations of appellant's statements as testified to by Detective Dygon are corroborated by the court interpreter's translations. Thus, the trial court properly admitted Detective Dygon's testimony concerning these translated conversations. See Chao, 478 So.2d at 30 (where defendant's uncle came to police station with defendant and translated defendant's statements in Spanish at officer's request, statement as translated by uncle and testified to by officer admissible under § 90.803(18)(c)); United States v. Alvarez, 755 F.2d 830, 859 (11th Cir.1985) (court properly admitted into evidence appellant's statements translated by government official for the benefit of another government official where translator was acting as agent for appellant and translation was admissible under Fed.R.Evid. 801.(d)(2)(C) or (D)); United States v. Da Silva, 725 F.2d 828 (2d Cir.1983) (same); United States v. Santana, 503 F.2d 710, 717 (2d Cir.) (translator functioned as agent for the coconspirators rendering testimony of conversations admissible), cert. denied, 419 U.S. 1053, 95 S.Ct. 632, 42 L.Ed.2d 649 (1974).
Next, appellant argues that the trial court's failure to sever appellant's trial from that of his codefendants was prejudicial error. Unfortunately, appellant failed to preserve this issue for appellate review. Herrera did not seek a severance, but he did join in codefendant Gomez' earlier alternative motions for suppression of the tape or severance of the trial; the trial court, however, did not rule on the severance motion, and Herrera did not adopt codefendant Gomez' renewed motion for severance.[3]Johnson v. State, 348 So.2d 646 (Fla. 3d DCA 1977); Wright v. State, 318 So.2d 477 (Fla. 4th DCA 1975), cert. denied, 334 So.2d 609 (Fla. 1976). Thus, the issue was not preserved. See State v. Barber, 301 So.2d 7 (Fla. 1974); Snead v. State, 415 So.2d 887 (Fla. 5th DCA 1982).
Even if we were to consider the issue on its merits, we would afford appellant no relief. In McCray v. State, 416 So.2d 804, 806 (Fla. 1982), the Florida Supreme Court delineated general guidelines in making a determination as to severance:
The [severance] rule is designed to assure a fair determination of each defendant's guilt or innocence.... Specifically, the fact that the defendant might have a better chance of acquittal or a strategic advantage if tried separately does not establish the right to a severance. Nor is hostility among defendants, or an attempt by one defendant to escape punishment by throwing the blame on a codefendant, a sufficient reason, by itself, to require severance.
McCray, 416 So.2d at 806 (citations omitted); see Dean v. State, 478 So.2d 38 (Fla. 1985); O'Callaghan v. State, 429 So.2d 691 (Fla. 1983); Menendez v. State, 368 So.2d 1278 (Fla. 1979). Appellant has not demonstrated the antagonistic defenses necessary to support a severance. Defenses are antagonistic if "the jury, in order to believe the core of testimony offered on behalf of that defendant, must necessarily disbelieve the testimony offered on behalf of his codefendants." United States v. Carter, 760 F.2d 1568, 1575 (11th Cir.1985) (quoting United States v. Berkowitz, 662 F.2d 1127, 1134 (5th Cir.1981)). "While severance is necessary to promote a fair determination of guilt or innocence, a fair determination of guilt is not foreclosed merely because codefendants blame each other for what *58 has transpired." Alfonso v. State, 528 So.2d 383 (Fla. 3d DCA 1987) (citations omitted). Both Arce and Herrera defended the charges on the ground that they were innocent bystanders, that they were entrapped into participating in the conspiracy, and that the evidence was insufficient to sustain their convictions. Their defenses were not antagonistic, and the jury could have believed both defendants. See United States v. Jonas, 786 F.2d 1019 (11th Cir.1986); United States v. Gironda, 758 F.2d 1201 (7th Cir.1985); United States v. Swingler, 758 F.2d 477 (10th Cir.1985); United States v. Vanichromanee, 742 F.2d 340 (7th Cir.1984). See also United States v. Burrell, 720 F.2d 1488 (10th Cir.1983). See generally Annotation, Antagonistic Defenses as Ground for Separate Trials of Codefendants in Criminal Case, 82 A.L.R.3d 245 (1978); Annotation, Right of Defendants in Prosecution for Criminal Conspiracy to Separate Trials, 82 A.L.R. 3d 366 (1978). Accordingly, we hold that appellant has not shown error in the denial of a severance.
Finally, appellant contends that the evidence is insufficient to support his convictions for trafficking and conspiracy and that, at most, it suggests his "mere presence" during the drug transaction.
"The law is well-settled that the crime of conspiracy consists of an express or implied agreement between two or more persons to commit a criminal offense. Both an agreement and an intention to commit an offense are necessary elements of this crime." Velunza v. State, 504 So.2d 780, 782 (Fla. 3d DCA 1987) (quoting Ramirez v. State, 371 So.2d 1063 (Fla. 3d DCA 1979), cert. denied, 383 So.2d 1201 (Fla. 1980)). Although mere presence is insufficient to establish participation in a conspiracy, Honchell v. State, 257 So.2d 889 (Fla. 1971); Ashenoff v. State, 391 So.2d 289 (Fla. 3d DCA 1980), and a conspiracy may not be inferred from mere aiding and abetting, Velunza, 504 So.2d at 782, presence is a factor the jury may consider in determining guilt. See United States v. Castro, 723 F.2d 1527 (11th Cir.1984); United States v. Kincade, 714 F.2d 1064 (11th Cir.1983). "[D]irect proof of an agreement is not necessary to establish a conspiracy; the jury is free to infer from all the circumstances surrounding and accompanying the act that the common purpose to commit the crime existed." McCain v. State, 390 So.2d 779, 780 (Fla. 3d DCA 1980) (citation omitted), review denied, 399 So.2d 1144 (Fla. 1981). Appellant's presence, his actions, and his statements constitute evidence that he knew cocaine was being sold in the apartment. The sale had been prearranged, and the undercover officer testified that appellant promised to return Detective Dygon's money if his purchase was unsatisfactory. The evidence is consistent with appellant's guilt and inconsistent with every reasonable hypothesis of innocence. See Munroe v. State, 514 So.2d 397 (Fla. 1st DCA 1987), review denied, 519 So.2d 987 (Fla. 1988); LaPolla v. State, 504 So.2d 1353 (Fla. 4th DCA 1987).
Appellant also argues that the state failed to prove his constructive possession of the cocaine. The elements necessary to prove constructive possession of contraband are (1) the ability to exercise dominion and control over the contraband; (2) knowledge of the presence of the contraband; and (3) knowledge of the illicit nature of the contraband. Brown v. State, 428 So.2d 250 (Fla.), cert. denied, 463 U.S. 1209, 103 S.Ct. 3541, 77 L.Ed.2d 1391 (1983); Johnson v. State, 456 So.2d 923 (Fla. 3d DCA 1984); Kuhn v. State, 439 So.2d 291 (Fla. 3d DCA 1983). Where contraband is found on premises under joint rather than exclusive possession, knowledge of the contraband and ability to control it will not be inferred from ownership, but must be proved by independent evidence. Brown, 428 So.2d at 252; Winchell v. State, 362 So.2d 992 (Fla. 3d DCA 1978), cert. denied, 370 So.2d 462 (Fla. 1979). Mere proximity to drugs, without more, is insufficient to prove possession, and courts have distinguished between cases where defendant is a mere visitor rather than an occupant. See Agee v. State, 522 So.2d 1044 (Fla. 2d DCA 1988); Brooks v. State, 501 So.2d 176 (Fla. 4th DCA 1987); Green v. State, 460 So.2d 986 (Fla. 4th DCA 1984); *59 Johnson; Taylor v. State, 319 So.2d 114 (Fla. 2d DCA 1975). Here, the evidence established the elements of appellant's constructive possession: he promised to return the officer's money if he was dissatisfied with the purchase, requested a sample of the cocaine, and stood next to the kilo of cocaine holding a knife. These circumstances fulfill the necessary elements to prove constructive possession. We hold that sufficient evidence supported the jury's verdict.
AFFIRMED.
NOTES
[1] The jury found Arce and Gazo guilty, but acquitted Gomez of all charges.
[2] Section 90.803(18)(c), Florida Statutes (1983), provides:

Hearsay Exceptions; availability of declarant immaterial.  The provision of s. 90.802 to the contrary notwithstanding, the following are not inadmissible as evidence, even though the declarant is available as a witness:
(18) ADMISSIONS.  A statement that is offered against a party and is:
... .
(c) A statement by a person specifically authorized by him to make a statement concerning the subject.
[3] Citing United States v. Taylor, 792 F.2d 1019 (11th Cir.1986), Herrera contends that his adoption of codefendant Gomez' initial motion for severance preserved this issue for appeal. His argument fails because the court, unlike the Taylor court, did not rule on the motion.