863 So.2d 1215 (2003)
Robert GORDON, Appellant,
v.
STATE of Florida, Appellee.
No. SC02-1212.
Supreme Court of Florida.
December 18, 2003.
*1217 Baron W. Given, Capital Collateral Registry, Bradenton, FL, for Appellant.
Charles J. Crist, Jr., Attorney General, and Kimerly Nolen Hopkins, Assistant Attorney General, Tampa, FL, for Appellee.
PER CURIAM.
Robert Gordon, an inmate under sentence of death, appeals an order of the circuit court denying a motion for postconviction relief under Florida Rules of Criminal Procedure 3.850 and 3.851. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons that follow, we affirm the denial of Gordon's postconviction motion.

FACTUAL AND PROCEDURAL BACKGROUND
Gordon was found guilty of first-degree murder and sentenced to death for his role in the 1994 murder of Dr. Louis Davidson. The facts are set forth in detail in this Court's opinion following Gordon's direct appeal. See Gordon v. State, 704 So.2d 107 (Fla.1997). We affirmed Gordon's conviction and sentence on direct appeal. Gordon subsequently filed a timely motion for postconviction relief, and the trial court granted a Huff hearing on August 9, 1999.[1] Following the Huff hearing, the court summarily denied a number of Gordon's claims,[2] but directed an evidentiary hearing on four claims.[3] Following the evidentiary *1218 hearing, the trial court denied Gordon's motion for postconviction relief in its entirety.

CLAIMS SUMMARILY DENIED
Initially, Gordon challenges the trial court's summary denial of claims which he argues warranted an evidentiary hearing. "To uphold the trial court's summary denial of claims raised in a 3.850 motion, the claims must be either facially invalid or the record must conclusively refute them." Occhicone v. State, 768 So.2d 1037, 1041 (Fla.2000) (citing Florida Rule of Criminal Procedure 3.850(d); Peede v. State, 748 So.2d 253 (Fla.1999); and Rivera v. State, 717 So.2d 477 (Fla.1998)). In LeCroy v. Dugger, 727 So.2d 236 (Fla.1998), we further explained:
A motion for postconviction relief can be denied without an evidentiary hearing when the motion and the record conclusively demonstrate that the movant is entitled to no relief. A defendant may not simply file a motion for postconviction relief containing conclusory allegations that his or her trial counsel was ineffective and then expect to receive an evidentiary hearing. The defendant must allege specific facts that, when considering the totality of the circumstances, are not conclusively rebutted by the record and that demonstrate a deficiency on the part of counsel which is detrimental to the defendant.
LeCroy, 727 So.2d at 239 (quoting Kennedy v. State, 547 So.2d 912, 913 (Fla.1989)).

JURY VENIRE
Gordon argues that the trial court erred in summarily denying his claim that trial counsel was ineffective in not effectively challenging the all-white venire from which his jury was selected. The standard for establishing a prima facie violation of the Sixth Amendment's fair cross-section requirement is set forth in Duren v. Missouri, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979):
(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.
Id. at 364, 99 S.Ct. 664. Because Gordon has not initially established a prima facie showing in his motion that black people were systematically excluded from the jury selection process, his claim was properly summarily denied by the trial court. In other words, Gordon has not set out in his motion a proper claim on the merits on this issue that counsel could have advanced. See Robinson v. State, 707 So.2d 688, 699 (Fla.1998) (holding that trial court did not err in summarily denying claim where the petitioner "made no showing at trial or in his postconviction motion that blacks are systematically excluded from venires in St. Johns County"). Accordingly, we deny Gordon relief on this claim.

TESTIMONY OF SUSAN SHORE
Next, Gordon argues that the trial court erred in summarily denying his claim that trial counsel was ineffective for failing to move to exclude the testimony of an alleged accomplice, Susan Shore. However, as noted by the trial court, there would not have been a valid basis on which to exclude Shore's testimony, as the State has the right to call witnesses, in particular an *1219 accomplice, to testify against a defendant. See Hunt v. State, 613 So.2d 893 (Fla. 1992). Further, the record reflects that Shore was cross-examined regarding the circumstances of her plea agreement, and trial counsel emphasized her obvious self-interest in avoiding more serious punishment. We find no error in the summary denial of this claim.
We also find Gordon's argument on appeal that the State engaged in continued and "malicious prosecution" of Susan Shore as procedurally barred. "Except in cases of fundamental error, an appellate court will not consider an issue unless it was presented to the lower court." Steinhorst v. State, 412 So.2d 332, 338 (Fla. 1982). As noted by the State, this claim was not raised in Gordon's motion for postconviction relief.

OPINION TESTIMONY
Next, Gordon argues that the trial court erred in denying an evidentiary hearing on his claim that counsel was ineffective for failing to object to or strike the expert opinion testimony of witnesses Mary Anderson and Detective Michael Celona.[4] However, we find no error in the trial court's conclusion that the testimonies of Mary Anderson and Detective Celona did not constitute expert testimony. Under section 90.702, Florida Statutes (2003), expert testimony is defined as "scientific, technical, or other specialized knowledge." The record demonstrates that Mary Anderson simply factually explained the contents of phone records that linked Gordon to Davidson's murder, and Detective Celona factually compared the locations on the phone records to locations on the cell site maps. Further, as noted by the trial court, while it is possible that Mary Anderson's lengthy experience with Cellular One informed her testimony and was useful in assisting the jury to understand the phone records, counsel also could not be deemed ineffective because if challenged, her record qualifications demonstrate that she would have been qualified as an expert on the matters she addressed. Since counsel cannot be deemed ineffective for pursuing futile motions, trial counsel cannot be deemed to have performed deficiently in this regard.

PENALTY PHASE JURY
Gordon also challenges the trial court's summary denial of his claim that trial counsel was ineffective for failing to seek a separate penalty phase jury. Gordon's postconviction motion alleges the following conduct as examples of counsel's ineffectiveness in this regard: (1) failing to seek a new penalty phase jury for Gordon different from the one which determined his guilt, and (2) failing to seek a penalty phase jury for the case against Gordon separate from the case against codefendant McDonald. However, having reviewed both instances on the merits, we conclude that the trial court did not err in determining that neither assertion constitutes ineffective assistance of counsel.
At the time of Gordon's 1995 trial, Florida law provided for a new penalty phase jury only in limited circumstances:
If, through impossibility or inability, the trial jury is unable to reconvene for a hearing on the issue of penalty, having determined the guilt of the accused, the trial judge may summon a special juror or jurors as provided in chapter 913 to determine the imposition of the penalty. *1220 See § 921.141(1), Fla. Stat. (1995) (emphasis added). As the trial court noted here, there was no legal basis demonstrated by Gordon in his postconviction motion for a separate penalty phase jury. Indeed, we have previously stated: "This Court has rejected the argument that separate juries should be empaneled for the guilt and penalty phases of all capital trials. Jurors must be able to follow the law as given by the trial judge, which includes following the judge's instructions to weigh aggravating and mitigating factors." Melton v. State, 638 So.2d 927, 929 (Fla.1994) (citation omitted).
Furthermore, with respect to the claim of neglect in not seeking separate penalty phase juries for Gordon and codefendant McDonald, this Court has explained:
Where co-defendants are tried together on a capital charge, there being no ground for a severance of the guilt-or-innocence phase of the trial, it is proper for the court to proceed with a joint sentencing trial so that the same jury that heard all the guilt-phase evidence can consider and weigh the relative roles and culpability of the offenders.
Maxwell v. Wainwright, 490 So.2d 927, 933 (Fla.1986). Here, where Gordon has not demonstrated in his postconviction motion a valid claim for severance or a separate jury on the merits that counsel could have advanced, it was entirely appropriate that the trial court deny this claim.

PROSECUTORIAL MISCONDUCT
Gordon contends that the trial court erred in summarily denying his claim that trial counsel was ineffective for failing to object to prosecutorial misconduct during closing argument. Gordon cites one statement. In closing, the prosecutor said, "He [Gordon] knows where that murder weapon was, and he knows what it is.... Gordon came out from Dr. Davidson's apartment, but he was by himself." Because the aforementioned guilt phase prosecutorial comment is the only one raised in Gordon's postconviction motion, it is the only one properly before this Court.
The trial court concluded that the comment was made in response to defense counsel's comments in closing regarding the absence of the murder weapon.[5] We conclude the prosecutor's comment merely reflected the State's theory of what happened in the case. Because we conclude these comments would not have constituted reversible error even had they been objected to at trial, we affirm the trial court ruling summarily denying this claim. See Thompson v. State, 759 So.2d 650, 664 (Fla.2000).

DNA TESTING
Next, Gordon asserts that the trial court erred in summarily denying his claim that trial counsel was ineffective for failing to seek to exclude the results of scientific tests where, through no fault of the State, the material tested was destroyed. Even if trial counsel's performance was deficient, Gordon has not shown how the innocent consumption of the DNA prejudiced him. In order to prevail on a claim involving destruction of DNA samples, a defendant must prove that the State acted in bad faith. See Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). Additionally, Florida courts have held that the unavoidable consumption of testing material does not trigger a constitutional violation. See State v. T.L.W., 457 So.2d 566 (Fla. 2d DCA 1984); State v. Herrera, 365 So.2d *1221 399 (Fla. 3d DCA 1978). Therefore, as Gordon has neither asserted a claim of bad faith nor explained any prejudice in this instance, he is not entitled to relief here.

INTERNATIONAL LAW
Gordon also argues that he was denied the protections of international law and deprived of the advice and assistance of officials of the Jamaican Consulate, a right which he asserts is granted under the authority of Article 36, Vienna Convention on Consular Relations. We have previously determined that such an issue is procedurally barred in a motion for postconviction relief because it could have and should have been raised on direct appeal. See Maharaj v. State, 778 So.2d 944, 959 (Fla.2000) (holding that petitioner's claim alleging a violation of the Vienna Convention was procedurally barred where it was not raised on direct appeal); Harvey v. Dugger, 656 So.2d 1253, 1256 (Fla. 1995) (holding that claims not raised on direct appeal are procedurally barred from consideration in a rule 3.850 motion). Furthermore, Gordon has failed to establish that he has standing to assert such a claim, as we have held that such treaties constitute agreements between countries, not citizens. See Maharaj, 778 So.2d at 959. Finally, as noted by the trial court, Gordon has failed to demonstrate prejudice. See Darling v. State, 808 So.2d 145 (Fla.2002) (holding that petitioner's claim that his rights under the Vienna Convention were violated did not merit relief due to petitioner's failure to demonstrate prejudice resulting from the violation).

CONSPIRACY
In the last of Gordon's summarily denied claims, Gordon argues that the trial court should have granted an evidentiary hearing on his claim that his due process rights were violated as a result of a conspiracy to present false evidence by state and federal authorities. This claim is facially invalid and unsupported by the record. Therefore, the claim merits no relief.

EVIDENTIARY HEARING
At Gordon's evidentiary hearing, four claims of ineffective assistance of counsel were addressed and denied. The framework for analyzing ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Id. at 687, 104 S.Ct. 2052. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052. Ineffective assistance of counsel claims present a mixed question of law and fact subject to plenary review based on the Strickland test. See Stephens v. State, 748 So.2d 1028, 1033 (Fla.1999). Therefore, this Court must engage in an independent review of the trial court's legal conclusions, while giving deference to the trial court's factual findings.

*1222 ALIBI
First, Gordon argues that trial counsel was ineffective for failing to present an alibi defense. Counsel's failure to put on an alibi defense was discussed in detail at the evidentiary hearing, and trial counsel stated in unambiguous terms that he was against the use of an alibi defense because he was certain that it would fail. Therefore, the trial court concluded that the decision not to put on an alibi defense constitutes a strategic decision. "[C]ounsel's strategic decisions will not be second-guessed on collateral attack." Johnson v. State, 769 So.2d 990, 1001 (Fla.2000) (citing Remeta v. Dugger, 622 So.2d 452 (Fla. 1993)).
Furthermore, trial counsel testified that in addition to relying on the results of the investigation that occurred prior to his appointment as Gordon's trial counsel, he hired another investigator to follow up on the alibisnone of which produced what he felt would be beneficial evidence for an alibi defense. Therefore, we find no error in the trial court's conclusion that Gordon has not satisfied the required showing of deficient performance under Strickland.
With respect to Gordon's claim that he did not voluntarily waive his alibi defense, the trial court discussed this claim at length in its order, having found that Gordon received competent advice regarding the use of an alibi defense. The record reflects that the trial court engaged in a colloquy with Gordon before the waiver. Further, the trial court pointed out that even though Gordon's and trial counsel's testimony on this issue were contradictory, the testimony of codefendant McDonald's trial counsel was consistent with Gordon's trial counsel. There was also testimony that Gordon was adamantly against a delay in the trial. Gordon knew that severance, and therefore delay, would result if he pursued the alibi defense. Accordingly, we find no error in the denial of relief on this claim.

DNA
Next, Gordon argues that trial counsel was ineffective for failing to challenge the admissibility of DNA evidence and failing to request a Frye hearing. At the evidentiary hearing, trial counsel and codefendant McDonald's counsel expressly indicated that as a part of the defense strategy, it was actually desirable to present to the jury the unidentified DNA evidence that did not implicate either Gordon or McDonald, in order to corroborate the defense theory of what happened the day of the murder. It was also a part of the strategy to get before the jury the small amount of DNA that implicated McDonald because it supported the defense theory that the defendants merely went in to get a piece of paper and that another man, Leonardo Cisneros, was the real killer. In its order, the trial court discussed the lack of a challenge to the DNA evidence at length, identifying a variety of reasons that this claim does not merit relief. We agree with the sound reasoning of the trial court, which was primarily based on the fact that counsel's decision was an intended strategic one, and the courts will not second-guess such a decision. See Johnson v. State, 769 So.2d 990, 1001 (Fla. 2000).

SEVERANCE
Gordon contends that trial counsel was ineffective for failing to move to sever his trial from that of codefendant McDonald. The evidentiary record reflects, however, that trial counsel's decision not to move to sever was the result of a strategic decision that it would be in Gordon's best interest for Gordon and McDonald to be tried as codefendants. As noted above, strong deference is granted to the strategic *1223 decisions made by trial counsel, even where they are ultimately unsuccessful in avoiding a guilty verdict or death sentence. We have repeatedly held "[c]ounsel's strategic decisions will not be second-guessed on collateral attack." Johnson v. State, 769 So.2d 990, 1001 (Fla.2000) (citing Remeta v. Dugger, 622 So.2d 452 (Fla. 1993)).
Further, as noted by the trial court, counsel cannot be deemed to be ineffective for failing to raise a motion that would have been futile. Under Florida Rule of Criminal Procedure 3.152(b)(1)(A), a severance of defendants may be ordered when it is appropriate to promote a fair determination of the guilt or innocence of the defendants. A severance is not necessary when the evidence is "presented in such a manner that the jury can distinguish the evidence relating to each defendant's acts, conduct, and statements, and can then apply the law intelligently and without confusion to determine the individual defendant's guilt or innocence." Coleman v. State, 610 So.2d 1283, 1285 (Fla. 1992) (quoting McCray v. State, 416 So.2d 804, 806 (Fla.1982)).
In McCray, this Court affirmed a denial of severance because: (1) the defendant had a full opportunity to confront and cross-examine each of the witnesses against him; (2) none of the codefendants inculpated each other by confessing; and (3) the evidence was not too complex for the jury to apply it to each individual defendant. See 416 So.2d at 807. The record in Gordon's case reflects that the criteria outlined by this Court in McCray were satisfied. Gordon had a full opportunity to confront and cross-examine each of the witnesses against him, McDonald did not inculpate Gordon by confessing to Davidson's murder, and the evidence was not too complex for the jury to apply it to each individual defendant. Therefore, severance would not have been proper in Gordon's case, and accordingly the trial court properly ruled that counsel was not ineffective for failing to move to sever Gordon's case from that of codefendant McDonald. Importantly, Gordon has failed to demonstrate that the same evidence presented at the joint trial would not have also been presented in a severed trial. Hence, no prejudice has been demonstrated.
Gordon's argument that other strategies could have been employed if separate trials had occurred appears entirely speculative. In McCray, this Court noted:
[T]he fact that the defendant might have a better chance of acquittal or a strategic advantage if tried separately does not establish the right to a severance. Nor is hostility among defendants, or an attempt by one defendant to escape punishment by throwing the blame on a codefendant, a sufficient reason, by itself, to require severance.
Id. at 806 (citations omitted).

COUNSEL'S PREPARATION
Lastly, Gordon asserts that trial counsel was ineffective for failing to thoroughly investigate and prepare. This claim appears to be a redundant attack on trial counsel's strategic decisions discussed above. Gordon's argument in this claim largely consists of reargument of the other ineffective assistance of counsel claims raised in Gordon's brief. Specifically, Gordon reasserts the claims denied by the trial court following the evidentiary hearing. Because these claims have been previously addressed, it is unnecessary to rehash them here.
With respect to his claim that trial counsel did not properly investigate and prepare for trial, the trial court concluded that Gordon had not satisfied either the deficient performance requirement or the prejudice requirement under Strickland. *1224 Gordon's argument consists of general complaints about trial counsel's knowledge of DNA, his knowledge of the existence of an alleged document, and his failure to present other defenses. These complaints appear entirely speculative.
On the other hand, the record reflects that trial counsel researched the case, investigated Gordon's alleged alibis, consulted with potential alibi witnesses, hired an independent investigator to follow up on those alibis, consulted with the Public Defenders' office investigator, consulted with the codefendant's counsel regarding trial strategy, consulted with Gordon, and hired an expert to assess Gordon's ability to understand and comprehend the proceedings. This evidence supports the trial court's rejection of this claim. We have emphasized that the fact that there may have been more that trial counsel could have done or that appellate counsel in reviewing the record with hindsight would have taken a different approach does not mean that trial counsel's performance during the guilt phase was deficient. See Cherry v. State, 659 So.2d 1069 (Fla.1995). Further, the trial court also considered that trial counsel's preparation was hindered because of Gordon's insistence on proceeding to trial, even though trial counsel took over the case only two months before trial.

CONCLUSION
For the reasons discussed above, we affirm the trial court's denial of Gordon's motion for postconviction relief.
It is so ordered.
ANSTEAD, C.J., and WELLS, PARIENTE, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Huff v. State, 622 So.2d 982 (Fla. 1993).
[2] The following claims were summarily denied by the trial court: (1) ineffective assistance of counsel in jury selection; (2) ineffective assistance of counsel for failure to move to exclude or suppress the testimony of Susan Shore; (3) ineffective assistance of counsel for failure to object to or strike the opinion testimony of Mary Anderson and Michael Celona; (4) ineffective assistance of counsel for failing to seek a separate penalty phase jury; (5) ineffective assistance of counsel for failing to seek a mistrial based on prosecutorial misconduct during closing; (6) ineffective assistance of counsel for failing to seek to exclude results of tests where the material tested had been destroyed; (7) the State of Florida violated his entitlement to certain rights established by the Vienna Convention; and (8) Gordon's due process rights were violated as a result of a conspiracy to present false evidence by state and federal authorities.
[3] The trial court granted an evidentiary hearing on the following claims: (1) ineffective assistance of counsel in failing to present an alibi defense; (2) ineffective assistance for failing to challenge the admissibility of DNA evidence and to conduct a hearing pursuant to Frye v. United States, 293 F. 1013 (D.C.Cir. 1923); (3) ineffective assistance of counsel for failing to move to sever; and (4) ineffective assistance of counsel for failing to thoroughly investigate and prepare for trial.
[4] Gordon challenges the testimony of Mary Anderson, a Cellular One employee, and part of the testimony of Detective Michael Celona, who testified at trial regarding cellular phone records, roaming areas, location of cell sites regarding cellular phones, and the location of individuals placing certain cellular phone calls.
[5] Because neither defendant put on any evidence at trial, the defendants' initial closing arguments were made first.