PATTERSON, Judge.
The appellants, Theodore J. DeLisi (Teddy) and Richard DeLisi (Richard), challenge their judgments and sentences for (I) violation of the Racketeer Influenced and Corrupt Organization (RICO) Act; (II) trafficking in 100 pounds or more of cannabis; and (III) conspiracy to traffic in 100 pounds or more of cannabis. The appellants raise nine points on appeal, one of which has merit and relates only to Teddy. We agree that there was insufficient evidence to convict Teddy of the conspiracy to traffic in cannabis alleged in count III. We affirm Teddy’s judgment and sentence for trafficking in cannabis and the RICO violation, and we affirm Richard’s judgment and sentence on all counts.
On April 26, 1989, the state filed an amended information charging Teddy, Richard, and Terry Johnson (a codefendant not a party to this appeal) with: (I) violation of the RICO Act, section 895.03, Florida Statutes (1987); (II) trafficking in 100 pounds or more of cannabis, section 893.-135, Florida Statutes (1987); and (III) conspiracy to traffic in 100 pounds or more of cannabis, sections 893.135, 777.04, Florida Statutes (1987).
Count III of the information alleged that the conspiracy began on or about June 17, 1988, and continued through July 24, 1988.[1] *964 The state’s conspiracy count and predicate act B of the RICO count are based upon three meetings between informant James White and Teddy. The state’s theory is that Teddy became a knowing participant in the conspiracy on July 19, 1988, and is therefore vicariously responsible and guilty of the substantive offense of trafficking in marijuana on July 24, 1988, which was the object of the conspiracy.
On June 17, 1988, James White was working as a confidential informant for the Florida Department of Law Enforcement (FDLE) and had arranged a meeting with Teddy and Richard. White testified that at this meeting Richard agreed with White to provide marijuana in Colombia to White who would act as a pilot and be responsible for the transportation of the marijuana from Colombia into Florida for subsequent distribution by Richard in New York. White testified that Teddy was at the meeting and stated “that he didn’t want to do it or — or he didn’t want to be involved in it.”
White’s next contact with Teddy occurred on July 7, 1988, at Highlands Automotive in Broward County, the DeLisi family’s automobile paint and body shop (the Shop). White was not certain where Teddy was in the Shop on July 7, 1988, but he was sure that Teddy did not participate in the criminal conspiracy conversation.
On July 19, 1988, the FDLE set up a meeting between Richard and White which was to take place at the Pompano Air Center. Agent Hutcheon, who had visual and electronic monitoring surveillance on White, testified that two people in a yellow Volkswagen picked up White at the Pompano Air Center. Agent Hutcheon lost visual and electronic contact with the yellow Volkswagen for approximately twenty minutes. Hutcheon was unable to identify Teddy as being one of the two individuals that he observed in the yellow Volkswagen.
Hutcheon guessed that the Volkswagen would be heading toward the Shop, and he headed directly there, but did not see the Volkswagen there and was unable to pick up any conversation on his receiver. After waiting at the Shop for approximately one minute, Agent Hutcheon returned to the Pompano Air Center, where he found White and had the opportunity to debrief him. Hutcheon testified that, based upon his personal observations and after debriefing White, White did not go to the Shop on July 19, 1988.
White testified that on July 19, 1988, he flew into the Pompano Air Center and Richard picked him up. Teddy was not present. They then proceeded to the Shop where, according to White, he got a map from Teddy. White admits he never told Hutcheon in the debriefing about the map.
The trial court denied the appellants’ motion for judgment of acquittal, and the jury found the appellants guilty on all counts. The trial court sentenced the appellants to consecutive sentences of thirty years in state prison on each count, for an aggregate sentence of ninety years.
We must reverse Teddy’s conviction on count III for conspiracy, because the state failed to prove Teddy’s involvement in an agreement to traffic in cannabis. Although Teddy was present at the June 17, 1988, meeting with Richard and informant White, White testified that Teddy disavowed any involvement in the plan to import marijuana. The state relies on White’s testimony that on July 19, 1988, he went to the Shop and that Teddy gave White a map “to refresh my memory to make sure I knew where I was going down to South America.” The surveillance officer’s testimony, however, contradicts White’s testimony, as the officer stated that based on his observations and what White told him, White did not go to the Shop on July 19, 1988.
Teddy has conceded that his fingerprints were on the map, but fingerprints do not establish the elements of a conspiracy — an express or implied agreement and an intention to commit an offense. See Edwards v. State, 516 So.2d 285 (Fla. 2d DCA 1987). Teddy’s fingerprints on the map, in conjunction with White’s testimony that Teddy gave him the *965 map, are sufficient to establish that Teddy was an aider and abettor in the trafficking of cannabis. Thus, we affirm his conviction on count II for trafficking in cannabis. Because a conspiracy may not be inferred from mere aiding and abetting, Herrera v. State, 532 So.2d 54 (Fla. 3d DCA 1988), the trial court erred in denying Teddy’s motion for judgment of acquittal on the conspiracy count.
Accordingly, we affirm Richard’s judgment and sentence on all counts; we affirm Teddy’s judgment and sentence on the trafficking and RICO counts, but reverse on the conspiracy count.
Affirmed in part, reversed in part.
THREADGILL, A.C.J., and ALTENBERND, J., concur.

. Richard concedes that he agreed to import marijuana with Terry Johnson and others. His trial defense was entrapment. The following *964 facts focus on the sufficiency of the evidence against Teddy.