537 So.2d 99 (1989)
Robert Dewey GLOCK, II, Petitioner,
v.
Richard L. DUGGER, etc., Respondent.
Robert GLOCK, Appellant,
v.
STATE of Florida, Appellee.
Nos. 73363, 73493.
Supreme Court of Florida.
January 12, 1989.
Larry Helm Spalding, Capital Collateral Representative and K. Leslie Delk, Staff Atty., Office of the Capital Collateral Representative, Tallahassee, for petitioner/appellant.
*100 Robert A. Butterworth, Atty. Gen. and Robert J. Landry, Asst. Atty. Gen., Tampa, for respondent/appellee.
PER CURIAM.
Robert Glock appeals the trial court's denial of his motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, petitions this Court for a writ of habeas corpus, and requests a stay of his execution presently scheduled to take place on January 17, 1989. We have jurisdiction.[1] For the reasons expressed, we affirm the trial court's denial of Glock's motion for postconviction relief, deny Glock's petition for a writ of habeas corpus, and deny his request for a stay of execution.
We find it appropriate to quote a portion of the material facts set forth in our initial opinion as follows:
The trial record reflects that on August 16, 1983, the woman victim arrived at a Bradenton shopping mall. As she exited her automobile, Puiatti and Glock confronted her, forced her back inside the car, and drove away with her. They took $50 from her purse and coerced her into cashing a $100 check at her bank. They then took the victim to an orange grove outside Dade City where they took the woman's wedding ring and abandoned her at the roadside. After traveling a short distance, the appellants determined that the woman should be killed, and they returned in the car to her. When the car's window came adjacent to the woman, Puiatti shot her twice. The appellants drove away, but, when they saw she was still standing, they drove by the victim again and Glock shot her. When the woman did not fall, the appellants made a third pass with the automobile, Glock shot her another time, and the woman collapsed.
... .
[Five days later] Puiatti and Glock individually confessed to the kidnapping, robbery, and killing. These initial confessions varied only to the extent that each blamed the other as instigator of the killing and each offered a differing sequence of who fired the shots at the victim. Each confessor admitted he had fired shots at the victim. Three days later, on August 24, Puiatti and Glock gave a joint statement concerning their involvement in the murder. In this joint confession, the appellants resolved the inconsistencies in their prior statements: they agreed that Glock initially suggested shooting the victim and that Puiatti fired the first shots and Glock fired the final shots.
Puiatti v. State, 495 So.2d 128, 129 (Fla. 1986), vacated, 481 U.S. 1027, 107 S.Ct. 1950, 95 L.Ed.2d 523 (1987) [Puiatti I]. As reflected in that opinion, Glock and Puiatti were tried jointly. The jury found both defendants guilty of first-degree murder, kidnapping, and robbery, and, at the penalty phase, the jury voted eleven-to-one in favor of the death penalty for Glock. The trial judge found three aggravating factors and no mitigating factors, and, in accordance with the jury's recommendation, imposed the death sentence. On direct appeal, we affirmed Glock's convictions and death sentence. Id.
Subsequently, the United States Supreme Court, in response to codefendant Puiatti's petition for writ of certiorari, directed that we reconsider our opinion in light of its recent decision in Cruz v. New York, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987). On remand, we found that Cruz was distinguishable. Puiatti v. State, 521 So.2d 1106 (Fla.), cert. denied, ___ U.S. ___, 109 S.Ct. 184, 102 L.Ed.2d 153 (1988) [Puiatti II]. There, we recognized "that a nontestifying codefendant's confession in a joint trial violates the confrontation clause except in those limited circumstances where indicia of reliability can be established." Id. at 1108. In distinguishing Puiatti from Cruz, we stated:
We fully recognize the Supreme Court's warning about the potential damning effects of a codefendant's confession on the incriminated defendant. However, we find that the facts in the *101 instant case are clearly distinguishable from those in Cruz because Puiatti and Glock not only entered into separate interlocking confessions, but they also subsequently entered into a joint confession resolving all prior inconsistencies. Neither Cruz nor Parker [v. Randolph, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979)] concerned a true joint confession entered into by both defendants. The joint confession, as we explained in the majority opinion, is substantially consistent with the individual confessions of Glock and Puiatti. Further, the joint confession was so interlocking, we do not believe Bruton applies because reliability was clearly established... .
Id. at 1108 [Puiatti II].
On October 28, 1988, a death warrant was signed for Glock with the execution scheduled for January 17, 1989. On November 28, 1988, the office of the Capital Collateral Representative filed on Glock's behalf a petition for postconviction relief under Florida Rule of Criminal Procedure 3.850, claiming that: (1) the admission of Puiatti's confession and statements from the joint confession violated Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); (2) the trial court erred in not granting a severance at either phase of the trial; (3) Glock's counsel was ineffective at the guilt and penalty phases of the trial; (4) the trial court unconstitutionally shifted the burden in its instructions concerning sentencing and its imposition of the sentence; (5) the mental health experts rendered professionally inadequate evaluations resulting in an unreliable sentencing determination; (6) evidence of the victim's character and victim impact evidence were improperly considered by the jury and the court; (7) the trial court erred in permitting the prosecutor to state during closing argument at the guilt phase that premeditation was presumed under the felony murder theory; (8) the jury instructions and prosecutor's comments violated Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); Adams v. Dugger, 816 F.2d 1493 (11th Cir.1987), cert. granted, ___ U.S. ___, 108 S.Ct. 1106, 99 L.Ed.2d 267 (1988); and Mann v. Dugger, 844 F.2d 1446 (11th Cir.), petition for cert. filed, ___ U.S.L.W. ___ (June 19, 1988); (9) the jury was misled by the sentencing instructions; (10) the trial court erred in refusing to provide instructions necessary to guide the jury's discretion in assessing the aggravating factors; (11) the prosecutor violated the golden rule during his opening statement and made an inflammatory remark during his closing argument; (12) Glock's emotional dependency precluded him from knowingly and intelligently waiving his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); (13) Glock was prejudiced by the joint sentencing proceeding and order; (14) the trial court failed to recognize mitigating circumstances in the record; (15) the instructions on felony murder violated Glock's constitutional rights; and (16) the trial judge erred in refusing to provide the jury with the defense's requested instructions concerning mitigating factors.
The trial judge directed no response by the state, held no hearing, and, on December 22, 1988, summarily denied each of Glock's claims, addressing them specifically in his order. He found that Glock had previously raised some of these claims on direct appeal and failed to raise others at that time; he concluded that the ineffective assistance of counsel claim lacked merit since Glock failed to demonstrate specific instances of ineffectiveness in the pleadings; he denied Glock's claim regarding the adequacy of the mental examinations; he found that, while he did hear the victim impact statement, he did not consider it in his sentencing determination; and he finally determined that the other claims lacked any merit.
On appeal from the trial court's denial and in his habeas corpus petition, Glock raises two principal claims: (1) that the admission of codefendant Puiatti's confessions violated Cruz v. New York, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987), and Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and (2) that trial counsel was ineffective for failure to obtain additional information from *102 Glock's family to aid the mental health experts in showing the deficiencies in Glock's personality which affected Glock's confession and presentation of evidence in the penalty phase.
In Puiatti II, we addressed the first claim and distinguished the joint confession of Glock and Puiatti from the confessions in Cruz. A careful reading of the joint confession, comprising thirty-five pages of the transcript, clearly indicates its reliability. We find that our reasoning in Puiatti II controls.
We find no merit to the second claim. The trial court record indicates that Glock's original trial counsel had three mental health experts appointed to confidentially assist him in determining whether Glock's mental condition could be utilized in either the guilt or penalty phase. The "additional information" Glock now seeks to submit is not new, but cumulative to that which was presented in the sentencing process. In addition to the reports provided to the experts, Glock's stepmother and sister testified to the substance of his family background. We find his contentions are without merit and reject this claim.
In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court set forth the test for ineffective assistance of counsel, stating:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Id. at 687, 104 S.Ct. at 2064. We find that the allegations in Glock's motion fail to establish that original trial counsel made errors "so serious that counsel was not functioning as `counsel' guaranteed the defendant by the Sixth Amendment." Id. We conclude that on their face, the allegations in the motion present no grounds for relief.
We have fully examined each of Glock's claims in his motion for relief pursuant to Florida Rule of Criminal Procedure 3.850 and find that the trial court was justified in summarily denying relief. Additionally, we find no merit in any of the grounds set forth in Glock's petition for habeas corpus relief.
Although we deny relief, we are most concerned about the administrative handling of this matter by the trial judge and the clerk of the circuit court in Pasco County. The death warrant was signed on October 28, 1988, and Glock filed his motion for postconviction relief on November 28. The trial judge did not set a hearing and summarily denied the motion in an order dated December 22. On the same day, the trial judge entered an order denying Glock's indigency without any justification. Glock had consistently been declared indigent throughout this cause, and the Capital Collateral Representative, in accordance with section 27.702, Florida Statutes (1987), certified Glock's indigency.[2] The state did not contest this issue. On December 23, the Clerk of the Supreme Court directed that the record be prepared and sent to the Supreme Court, and, on December 28, Glock filed his appeal to this Court. The clerk of the circuit court refused to accept Glock's notice of appeal to this Court without first receiving payment of a cash filing fee, and, further, he refused to prepare the record and send it to this Court unless the collateral representative paid him $5,037.90. Finally, on January 5, 1989, the Chief Justice of this Court *103 found it necessary to enter a direct order for the clerk of the circuit court of Pasco County to prepare the record on appeal and have it delivered. This Court did not receive the record until January 10, the date of oral argument and eighteen days after the initial request. Partly because of these problems, this Court has had to process the entire matter in six days, and the federal court now has only five days to consider this matter before the scheduled January 17 execution. This is so even though the governor signed Glock's death warrant on October 28, 1988, and Glock filed his application for relief on November 28. We emphasize that the trial courts must give these death penalty postconviction proceedings first priority. Consideration should be both thorough and expeditious. Trial courts should not, however, be reluctant to set evidentiary hearings when appropriate. See Jones v. State, 446 So.2d 1059 (Fla. 1984). This case is not a model on how our postconviction process should work.
In accordance with our holdings, we affirm the trial court's summary denial of 3.850 relief, deny the petition for writ of habeas corpus, and deny the stay of execution.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] Art. V, § 3(b)(1) & (9), Fla. Const.
[2] The Capital Collateral Representative attached Glock's affidavit, which showed his net worth to be two cents.