898 So.2d 132 (2005)
Abdelhafid RAHMANI, Appellant,
v.
STATE of Florida, Appellee.
No. 5D03-3469.
District Court of Appeal of Florida, Fifth District.
March 4, 2005.
Rehearing Denied April 7, 2005.
Landon P. Miller, Naples, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Bonnie Jean Parrish, Assistant Attorney General, Daytona Beach, for Appellee.
SHARP, W., J.
After a jury trial, Rahmani, a citizen of Morocco, appeals from a judgment convicting him of two counts of murder and one count of burglary of a dwelling with an assault or battery with a firearm.[1] He was sentenced to three concurrent life sentences. We affirm.
*133 Rahmani argues the trial court erred in denying his motion to suppress statements he made to a newspaper reporter, Schouten, and to a private citizen, Ahmed, after he had been arrested and placed in the back of a police vehicle.[2] Jaynes, a Seminole County major crimes investigator, arrived at the scene shortly after Rahmani had been detained by Orange County deputies, in Orange County, pursuant to an arrest warrant issued by the Seminole County Sheriff's Department.
Jaynes testified that Rahmani told him he wanted to tell his story to the reporter, but he needed a French interpreter to properly express himself. Jaynes observed the conversation between the reporter and Rahmani, but could not hear what they said. He testified he had not spoken with the reporter about the conversation with Rahmani before it took place, and he gave the reporter no instructions about interviewing him or any questions to ask. He did request that a tape recorder be placed in the police vehicle, which was done. The reporter also testified he had not spoken with any police officers before interviewing Rahmani.
After his conversation with the reporter, Rahmani indicated he wanted to speak with Jaynes further, but he needed a French interpreter. He asked Jaynes to speak to Ahmed, an employee at Value Rent A Car where the arrest took place. She agreed to speak with Rahmani after Jaynes asked her to, and she told him she would record the conversation with a tape recorder provided by Jaynes.
The trial judge correctly found that Schouten and Ahmed were not acting under the authority of law enforcement and neither attained the status of a police agent. Accordingly, the statements were voluntary on Rahmani's part and no Miranda[3] warnings had to have been given to make them admissible in court.[4]
We also find that the affidavit for the search warrant of Rahmani's vehicle contained sufficient facts to establish probable cause to search it. Accordingly, evidence seized pursuant to the search warrant (live shotgun shells and plastic gloves) was admissible in evidence at Rahmani's trial.
As an additional ground to bolster his argument that the statements made to the reporter and Ahmed should have been suppressed, Rahmani contends law enforcement failed to advise the Moroccan Consulate of his arrest and failed to advise him of his right to have contact with the Moroccan Consulate under the Vienna Convention on Consular Relations. Further, he asserts that after his confinement in jail and pre-trial, police authorities denied his requests to contact the Moroccan Consulate.
Pursuant to Article 36 of the Vienna Convention, law enforcement is required to advise the Consulates of participating nations, including Morocco, of the arrest and incarceration of one of their citizens and to inform the citizen of his or her right to have contact with the Consulate. This is for the purpose of allowing a foreign national's consular office to visit with him or her in custody or detention, to converse *134 and correspond with him or her, and to arrange for legal representation.
Rahmani reasons that after his arrest and prior to being interviewed, he should have been advised of his right to speak to consular officials under the Vienna Convention. He contends that he should have been advised of these rights prior to or in conjunction with being given his Miranda rights. Had this been accomplished, he asserts that he would not have spoken with the reporter or Ahmed and thus he was prejudiced.
In this context, we reject Rahmani's argument. We do not determine at what point in time a duty arises under the Treaty to inform a foreign national of his right to contact the consulate and visa-versa, except to say it does not arise on the point of arrest and prior to custodial interrogation accompanied by Miranda warnings. If voluntary statements are made by an arrested foreign national, immediately after an arrest, compliance with the Treaty is not a relevant consideration in determining whether consensual statements made to private persons are admissible at trial. See United States v. Ademaj, 170 F.3d 58 (1st Cir.1999). Further, no prejudice in this regard was established. See Maharaj v. State, 778 So.2d 944 (Fla.2001).
AFFIRMED.
SAWAYA, C.J., and PLEUS, J., concur.
NOTES
[1] See §§ 782.04(1)(a), 812.13(1), 812.13(2)(a), Fla. Stat. (1996).
[2] Rahmani made incriminating statements to the reporter and what amounted to an admission of having committed the murders to the private citizen.
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] Coolidge v. New Hampshire, 403 U.S. 443, 487, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). See also State v. Smith, 641 So.2d 849 (Fla.1994) (no reasonable expectation of privacy in police vehicle).